```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
BEATRICE SHIRLEY WILLIAMS-STEELE,     : 12 Civ. 0310 (GBD) (JCF)
                                      :
            Plaintiff,                :      REPORT AND
                                      :      RECOMMENDATION
     - against -                      :
                                      :
TRANS UNION, EXPERIAN, and            :
EQUIFAX,                              :
                                      :
            Defendants.               :
- - - - - - - - - - - - - - - - - - -:
```
TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.

Beatrice Shirley Williams-Steele, proceeding pro se, brings this action against Trans Union and two other credit reporting agencies alleging violations of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681 et seq. The claims relate to alleged errors in the plaintiff's credit reports, which the defendants issued.

Trans Union has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. This defendant has also counterclaimed for breach of a Settlement Agreement that it entered into with Ms. Williams-Steele in April 2011 to resolve a prior lawsuit involving FCRA claims. For the reasons that follow, I recommend that the defendant's motion to dismiss be granted and its counterclaim be dismissed without prejudice.

Background

In her prior case, the plaintiff alleged violations of the FCRA against Trans Union, Experian, and Equifax. (Complaint in 10 Civ. 6749 ("Prior Compl.")). She claimed her credit report contained inaccurate information, including an erroneous tax lien (Prior Compl., ¶ IIIC). On April 14, 2011, Ms. Williams-Steele entered into a Settlement Agreement with Trans Union in which the parties agreed to settle all claims for a total payment of $4,000.00 to the plaintiff. (Settlement Agreement and Release ("Settlement"), ¶ 2). In return, the plaintiff agreed to release Trans Union from any claims "of any kind or nature, known or unknown, which Plaintiff had, now has, or may have, on account of, arising out of, based upon or in any manner connected with, any matter, cause or thing whatsoever at any time up to and including the date of execution of this Agreement," including claims "which relate in any manner to Plaintiff's credit history information as reported by Trans Union." (Settlement, ¶ 4). As part of the Settlement Agreement, the plaintiff also acknowledged that all information in her April 2011 Trans Union consumer disclosure was accurate and would not be the basis for any future actions. (Settlement, ¶ 5; April 2011 Consumer Disclosure ("April 2011 Consumer Disc."), attached as Ex. A to Settlement).

On January 12, 2012, Ms. Williams-Steele filed the instant

action. (Complaint ("Jan. 2012 Compl.")). In this Complaint, she alleges that a tax lien was wrongfully reported on her credit report, that certain credit accounts should have been included, and that some contact information, namely her phone number and an alternate address, was inaccurate. (Jan. 2012 Compl., ¶ IIIB, C).

On November 14, 2013, Trans Union filed its motion for judgment on the pleadings. The defendant argues that the plaintiff's claims regarding the tax lien and the missing credit accounts are barred by the terms of the Settlement Agreement. (Defendant Trans Union, LLC's Memorandum in Support of Motion for Judgment on the Pleadings Pursuant to Rule 12(c) ("Def. Memo.") at 1). The defendant also contends that the plaintiff's claim regarding the inaccurate contact information is not actionable "because identifying information does not bear on a consumer's creditworthiness and so does not constitute credit reporting information under the FCRA." (Def. Memo. at 2). Earlier, Trans Union had asserted a breach of contract counterclaim, contending that the plaintiff materially breached the Settlement Agreement by filing the current action in which she asserts claims that were, or could have been, raised in the previous lawsuit. (Def. Memo. at 2).

3

Discussion

    A. Legal Standard

The standard for addressing a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as that used in evaluating a motion to dismiss under Rule 12(b)(6). L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 429 (2d Cir. 2011). A court therefore must accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Id. A complaint need not contain detailed factual allegations, but it must contain more than mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)). Where a complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the requirements of Rule 8. Id. at 679 (citing Fed. R. Civ. P. 8(a)(2)). In ruling on a motion to dismiss, the court's task "'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)).

Pro se complaints are held to less stringent standards than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir. 2008) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)). In fact, pleadings of a pro se party should be read "'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). Even after Iqbal, which imposed heightened pleading standards for all complaints, pro se complaints are to be liberally construed. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). Dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements. See Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997); accord Honig v. Bloomberg, No. 08 Civ. 541, 2008 WL 8181103, at *4 (S.D.N.Y. Dec. 8, 2008), aff'd, 334 F. App'x 452 (2d Cir. 2009).

   B. The Plaintiff's Claims

      1. Tax Lien Claim

Ms. Williams-Steele alleges that a tax lien erroneously appears on her credit report (Jan. 2012 Compl., ¶ IIIC), and that the "whole point of the [prior] law suit was to have that removed." (Affirmation in Opposition to Motion, dated Nov. 18, 2013 ("Affirm. in Opp.") at 3). In the Settlement Agreement, which resolved the

5

prior lawsuit, the plaintiff acknowledged that "all information contained within [her April 2011 Trans Union consumer disclosure] is accurate with the exception of the Bronx Registry #906389 account [the tax lien], which Ms. Williams-Steele states is inaccurate . . . , and will not provide the basis for any future claims against Trans Union." (Settlement, ¶ 5).

Although this language is ambiguous, the most natural reading[1] -- that the plaintiff agrees she will not bring future claims based on anything in her April 2011 disclosure, including the tax lien -- prohibits her from bringing this claim. In any event, under the FCRA, the tax lien, which was satisfied in April 2008 (April 2011 Consumer Disc. at 1)), lawfully appears on her report. See 15 U.S.C. § 1681c(a)(3) (stating consumer report may not contain "[p]aid tax liens which, from date of payment, antedate the report by more than seven years"). Accordingly the defendant is entitled

---

[1] This paragraph of the Settlement could be read either of two ways: (1) that Ms. Williams-Steele agrees that everything in her April 2011 disclosure, with the exception of the tax lien, is accurate, and nothing in the disclosure, including the tax lien, will provide the basis for future claims, or (2) that Ms. Williams-Steele agrees that everything in the disclosure is accurate and will not serve as the basis for future claims, with the exception of the tax lien, the accuracy of which she contests, and which still may serve as the basis for a future claim. Though the language is unclear, the former interpretation is more plausible, since it makes little sense for Trans Union to have settled that lawsuit while still giving Ms. Williams-Steele the option of bringing this claim again.

to report the plaintiff's tax lien until April 2015, when it must be removed. Therefore, the plaintiff's tax lien claim is not actionable under the FCRA until that time and should be dismissed.

### 2. Credit Account Claim

The plaintiff's claim regarding missing credit accounts is precluded by the terms of the Settlement Agreement. The plaintiff alleges that four accounts, which currently do not appear on her credit report, should be reported. (Compl., ¶ IIIC). The plaintiff believes that listing these accounts on her report would result in an increased credit score. (Compl., ¶ IV). These accounts -- Saks Fifth Avenue, Lord & Taylor, American Express, and Macy's -- predate her prior suit (Compl., ¶ V), and she raised a similar claim there regarding three of them -- Saks Fifth Avenue, Lord & Taylor, and American Express. (Prior Compl., IIIC, IV). Accordingly, the claim relating to those accounts is precluded by the express terms of the Settlement Agreement, in which she released Trans Union from any claims she "had, now has, or may have . . . based directly or indirectly upon facts, events, transactions or occurrences related, alleged, embraced by or otherwise referred to at any time in the Lawsuit." (Settlement, ¶ 4).

The plaintiff's claim regarding the Macy's account is also precluded by the terms of the Settlement Agreement, though for different reasons. That account, as mentioned above, predates her

prior suit and appeared on her April 2011 Trans Union Consumer Disclosure. (April 2011 Consumer Disc. at 2). In the Settlement Agreement, the plaintiff acknowledged that she had reviewed that Consumer Disclosure and agreed to its accuracy. (Settlement, ¶ 5). She also agreed that the information on the April 2011 Consumer Disclosure would "not provide the basis for any future claims against Trans Union." (Settlement, ¶ 5). Because of this, the only way the Macy's account could serve as the basis for a new claim is if the information relating to the account changed between the time the parties entered into the Settlement Agreement and when Ms. Williams-Steele filed the instant Complaint.

Yet, there is no difference between the information associated with the Macy's account reflected on the Consumer Disclosure[2] that served as the basis for the instant Complaint (December 2011 Trans Union Consumer Disclosure ("Dec. 2011 Consumer Disc.") at 2; Compl., ¶ IIIC) and that reflected on the April 2011 Consumer Disclosure, which the plaintiff approved as part of the Settlement Agreement. (April 2011 Consumer Disc. at 2; Settlement, ¶ 5). Both consumer reports refer to the same account number, the same balance ($0), the same date updated (July 2009), the same date

---

[2] The consumer report was incorporated by reference in the plaintiff's Complaint (Compl., ¶ IIIC), and was provided to the Court by counsel for the defendant.

opened (June 2003), the same date paid (September 2003), and the same comment ("acct info disputed by consumr [sic]").  Both consumer disclosures reflect that there had been no late payments in the past ninety days and bear an "OK" symbol for the previous five months.  (Dec. 2011 Consumer Disc. at 2; April 2011 Consumer Disc. at 2).  Since there were no changes in the information relating to her Macy's account between the resolution of the prior action and the filing of the instant Complaint, this claim could have been raised in the prior suit and, as a result, is precluded by the terms of the Settlement Agreement and should be dismissed.

      3. <u>Contact Information Claim</u>

Ms. Williams-Steele alleges that certain contact information on her credit report is inaccurate.  Specifically, she claims that her December 2011 Consumer Disclosure listed her telephone number without an area code and listed an allegedly inaccurate address under "Other Addresses."  (Dec. 2011 Consumer Disc. at 1; Compl., ¶ IIIC).  Since this claim was neither asserted in her prior Complaint nor addressed in the Settlement Agreement, it is not barred by the terms of that Agreement.  Nevertheless, it is not actionable.

Under the FCRA, a consumer reporting agency must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report

9

relates." 15 U.S.C. § 1681e(b). A "consumer report" is "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" that is used, or is expected to be used, to determine eligibility for purposes such as credit, insurance, or employment. 15 U.S.C. § 1681a(d)(1). The FCRA allows for a civil cause of action for willful and negligent noncompliance "with any requirement imposed" by the FCRA. 15 U.S.C. §§ 1681n, 1681o. Therefore, the defendant may be held liable if it failed, either willfully or negligently, to follow reasonable procedures in assuring accuracy in preparing information that potentially could be used in connection with determining her eligibility for credit. 15 U.S.C. § 1681a(d)(1). Neither a missing area code nor an allegedly inaccurate alternate address bear on any of the factors listed in 15 U.S.C. § 1681a(d)(1), or is likely to be used in determining eligibility for any credit-related purpose; therefore, these alleged errors are not actionable. See Ali v. Vikar Management, Ltd., 994 F. Supp. 492, 497 (S.D.N.Y. 1998) ("[N]o restriction is put on the use of information that is not a 'consumer report' . . . . Address information on a consumer, for example, is not a consumer report because it is not information that bears on any of the

characteristics described in 15 U.S.C. § 1681a(d)(1)."). The plaintiff's claim regarding inaccurate contact information should be dismissed.

    C. <u>The Counterclaim</u>

The only issue that remains is the defendant's counterclaim for breach of the Settlement Agreement. The Settlement Agreement provides that "Trans Union may recover any and all reasonable attorneys' fees, costs, and expenses incurred in enforcing any term of this Agreement or for breach thereof in addition to any other damages to which Trans Union may be entitled." (Settlement, ¶ 12). As discussed above, the plaintiff violated the express terms of the Settlement Agreement, and the defendant claims it has been damaged to the extent it has incurred fees and costs responding to the plaintiff's Complaint and enforcing the Settlement Agreement. (Def. Memo. at 9).

A court is required to dismiss an action if it determines at any time that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Because this counterclaim is based on breach of a settlement agreement -- a state common-law contract claim -- it does not appear to qualify as an action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Similarly, although the parties may be citizens of different states, it is unlikely that the fees and costs Trans

Union incurred meet the $75,000 threshold for diversity jurisdiction. 28 U.S.C. § 1332(a). While the Court is empowered to exercise supplemental jurisdiction over this counterclaim, see 28 U.S.C. § 1367, a district court typically should decline to do so if all federal claims have been dismissed. <u>Haynes v. Zaprowski</u>, 521 Fed. Appx. 24, 28 (2d Cir. 2013) (quoting <u>Lerner v. Fleet Bank, N.A.</u>, 318 F.3d 113, 130 (2d Cir. 2003)). Accordingly, I recommend that the counterclaim be dismissed unless the defendant demonstrates why this Court would have subject-matter jurisdiction over it.

<u>Conclusion</u>

For the reasons set forth above, I recommend that the defendant's motion for judgment on the pleadings (Docket no. 64) be granted and the Complaint be dismissed. In addition, I recommend that the counterclaim be dismissed without prejudice to a showing that the Court has subject-matter jurisdiction. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of Court, with extra copies delivered to the chambers of the Honorable George B. Daniels, U.S.D.J., Room 1310, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.

Failure to file timely objections will preclude appellate review.

Respectfully submitted,

*[signature]*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       April 11, 2014

Copies mailed this date to:

Beatrice Shirley Williams-Steele
1085 Nelson Avenue, 4A
Bronx, New York 10452

Camille R. Nicodemus, Esq.
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN 46077